IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO



DAVID BRAVO PERAZZA,

Plaintiff

v.                                          CIVIL 96-2302 (JAG)

COMMONWEALTH OF PUERTO RICO, et al.,

Defendants

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter is before the court on defendants' motion for summary judgment of April 14, 1999. (Docket No. 51.) The plaintiff opposed the motion on May 24, 1999. (Docket No. 54.) The defendants filed a motion to supplement the motion for summary judgment on January 19, 2001. (Docket No. 75.) The plaintiff filed a motion in opposition to defendants' supplemental motion on April 4, 2001. (Docket No. 81.) Both parties submitted a joint pretrial report on June 16, 1999. (Docket No. 55.)

### I. Factual Background

On June 6, 1990, plaintiff David Bravo Perazza was hired to work as a teacher specializing in technological education by the Vocational Rehabilitation Administration ("Administration") of the Department of Family. Within months of his hire, plaintiff alleges that he was subjected to sexually harassing advances by co-defendant Luis Iván Delgado Butler ("Butler"), who was a supervisor in the Administration and aided in the initial decision to hire Bravo. During this time, plaintiff informed Mr. José Bruno ("Bruno"), his immediate supervisor, that he wanted to file a sexual harassment complaint against Butler. Bruno allegedly shouted at plaintiff, intimidating and making him fear reprisal so that he did not file a complaint at that time. Perazza also informed Mr. David Rodríguez ("Rodríguez"), Assistant Personnel Director, and Ana Rosa Figueroa

CIVIL 96-2302 (JAG)                2

("Figueroa"), a co-worker of Rodríguez. These two responded in kind with knowing laughter followed by the refrain "he does that to every new male employee."

Plaintiff was transferred to the Río Piedras Vocational Rehabilitation facility on September 9, 1993. (Docket No. 1.) In the beginning of 1995, plaintiff visited the Office of the Procurator for the Persons with Impediments ("OPPI"). He was diagnosed with suffering personality disorder, which included intellectual confusion, lack of concentration, and slow thoughts. In that same year, plaintiff was diagnosed with Chronic Epstein Barr Virus ("CEBV"). A doctor also discovered that plaintiff was suffering from Chronic Fatigue Immune Dysfunction Syndrome ("CFIDS"). These various illnesses caused substantial impairments with plaintiff's reading and speaking skills while causing great difficulty with concentration and other cognitive skills. (Docket Nos. 54 and 55.)

As a result of his condition, the plaintiff's personal appearance was beginning to change and the ire of his co-workers was beginning to grow at his new job location. The work atmosphere deteriorated so that plaintiff was experiencing "intimidation, defamation, libel, innuendos, etc.," that also further aggravated and worsened his condition. (Docket No. 55.)

Plaintiff was assigned new responsibilities. In December 1994, plaintiff had been given the additional task of academic evaluation of clients. The plaintiff protested and asked for reasonable accommodations due to the cognitive limitations imposed on him by his condition. The plaintiff specifically told the Administration that his inability to complete the assigned tasks was solely due to his condition. The Administration then requested an independent medical evaluation be acquired to substantiate plaintiff's claims. Bravo then obtained the sought after medical evaluations.

On June 5, 1995, the plaintiff submitted the medical evaluations along with a written request for reasonable accommodations due to his condition to the OPPI. Bravo

CIVIL 96-2302 (JAG)                                    3

also filed a complaint against the Administration and those persons in supervisorial positions within it. This written request and complaints failed to change any aspect of plaintiff's workload or, in general, his job. At the end of June, 1995, plaintiff was separated from his work and told not to appear at his jobsite. Then, on August 31, 1995, the Department of Family notified plaintiff that his employment was terminated, effective that same day. After plaintiff lost his job, he sent a letter to Dr. José Santana, the Administrator of the Administration on December 15, 1995 regarding his termination. (Docket Nos. 1, 55 and 75.) And on January 11, 1996, the plaintiff subscribed a sworn statement regarding his termination. (Docket No. 75, Exhibit K.)

On August 27, 1996, plaintiff sent a letter concerning the sexual harassment to Mrs. Carmen Rodríguez, Secretary of the Department of Family and Mr. Ramón Hernández Zayas, Auxiliary Secretary of Personnel of the Department of Family, and the Director of the Legal Division. (Docket No. 54.) Plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC") on or around July 2, 1997. (Docket No. 51.)

Plaintiff filed this complaint on October 24, 1996. (Docket No. 1.)

## II. Standard of Review

Summary judgment is entered only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Straughn v. Delta Air Lines, Inc., 250 F.3d 23, 33 (1st Cir. 2001); see Abbadessa v. Moore Bus. Forms, Inc., 987 F.2d 18, 22 (1st Cir. 1993). To find in favor of the defendants, this court "must view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's

CIVIL 96-2302 (JAG)                                    4

favor." Suárez v. Pueblo Int'l, Inc., 229 F.3d 49, 53 (1st Cir. 2000) (quoting Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990)); see Pérez v. Volvo Car Corp., 247 F.3d 303, 310 (1st Cir. 2001).

In a motion for summary judgment, the moving party must demonstrate "an absence of evidence to support the nonmoving party's case" to discharge its burden of proof. Celotex Corp. v. Catrett, 477 U.S. at 325. Then the nonmoving party adopts the burden of showing that there is a factual disagreement. "[T]o defeat a properly supported motion for summary judgment, the nonmoving party must establish a trial-worthy issue by presenting 'enough competent evidence to enable a finding favorable to the nonmoving party.'" Hidalgo v. Overseas Condado Ins. Agencies, Inc., 120 F.3d 328, 332 (1st Cir. 1997) (quoting Leblanc v. Great Am. Ins. Co., 6 F.3d 836, 842 (1st Cir. 1993), cert. denied., 511 U.S. 1018 (1994)). Plaintiff may not rely on "conclusory allegations, improbable inferences, and unsupported speculation." Pagano v. Frank, 983 F.2d 343, 347 (1st Cir. 1993) (quoting Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990)); see Burns v. State Police Ass'n of Mass., 230 F.3d 8, 9 (1st Cir. 2000). Only at this point does the court construe material facts and reasonable inferences in favor of the non-moving party. Domínguez v. Eli Lilly & Co., 958 F. Supp. 721, 727 (D.P.R. 1997).

### III. Issues

In his opposition to defendants' supplementary motion for summary judgment, the plaintiff raises three issue. First, the defendants' supplemental motion exceeds the subject matter previously determined by the court. Second, the defendants violated Rule 108 of the Local Rules of the United States District Court for the District Court of Puerto Rico ("Local Rule"). Last, the defendants violated Rule 901, Federal Rules of Evidence.

The defendants' supplemental motion for summary judgment followed the plain language of the October 17, 2000 court order, which stated that "[d]efendant will have

CIVIL 96-2302 (JAG)                                5

thirty days after the transcript of the depositions are delivered to supplement their motion for summary judgment[.]" (Docket No. 72.) Although defendants' motion had additional exhibits, the substance of its contentions have not changed. Thus, I will not strike defendants' supplemental motion for summary judgment.

The second and third issues raised by plaintiff concern the propriety of defendants' exhibits in light of Rule 901 and Local Rule 108. The plaintiff points out that according to Local Rule 108.1 exhibits that are "not in the English Language" are barred and cannot be considered in evaluating the merits of defendants' supplemental motion for summary judgment. Santiago v. Group Brasil, Inc., 830 F.2d 413, 415 n.1 (1st Cir. 1987). Accordingly, I will not evaluate exhibits A, B, D, E, F, G, H, and I of defendants' supplementary motion for summary judgment in making my recommendation.

On the other hand, Rule 901, Federal Rules of Evidence, "does not erect a particularly high hurdle." United States v. Hernández García, 215 F.3d 1312 (1st Cir. 2000) (unpublished opinion) (quoting United States v. Ortiz, 966 F.2d 707, 716 (1st Cir. 1992)). "The burden of authentication 'does not require the proponent of the evidence to rule out all possibilities inconsistent with authenticity, or to prove beyond any doubt that the evidence is what it purports to be. Rather, the standard for authentication, and hence for admissibility, is one of reasonable likelihood.'" United States v. Hernández García, 215 F.3d at 1312 (quoting United States v. Holmquist, 36 F.3d 154, 168 (1st Cir. 1994), cert. denied, 514 U.S. 1084 (1995)). In fact there is a reasonable likelihood that exhibit M of defendants' supplemental motion for summary judgment is authentic and that it is what defendant purports it to be. Therefore, I will evaluate exhibit M in making my recommendation.

IV. Sexual Harassment Claim

CIVIL 96-2302 (JAG)                                  6

The defendants' motion for summary judgment avers that plaintiff's claim of sexual harassment is time-barred. The plaintiff filed a complaint concerning the sexual harassment on August 27, 1996, some three years after the alleged harassment by Butler. In addition, the plaintiff did not file a complaint with the EEOC until on or around July 2, 1997. Under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1), the plaintiff must exhaust his administrative remedies before filing a civil action. Moreover, Title VII requires that an individual must file a complaint with the EEOC within 180 days of the incident or within 300 days of the alleged harassment if state or local proceedings are initiated. Failure to do so bars litigation over those claims. See 42 U.S.C. § 2000e-5(e). Thus, the defendants conclude that plaintiff's complaint regarding sexual harassment is barred from being litigated in this court. (Docket No. 51.)

The Americans With Disabilities Act ("ADA") requires the exhaustion of administrative remedies before plaintiff can bring a civil suit. More relevant, 42 U.S.C. § 2000e-5(e)[1] outlines time limitations on filing a complaint with the EEOC. Here, the

---

[1] A charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred and notice of the charge (including the date, place and circumstances of the alleged unlawful employment practice) shall be served upon the person against whom such charge is made within ten days thereafter, except that in a case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, such charge shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred[.]

42 U.S.C. § 2000e-5(e)(1).

CIVIL 96-2302 (JAG) 7

plaintiff failed to file this action within the 300 days required by law. Yet "filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel or equitable tolling." Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393, reh'g denied, 456 U.S. 940 (1982).

The plaintiff avers that there exist several reasons for his failure to comply with the time limitations period. The plaintiff's existing disability, which he claims was also exacerbated by the constant torment, stress, and aggravation he faced everyday at his job, contributed to his lack of diligence in filing. Moreover, the plaintiff argues that the absence of counsel was also an important contributing factor. Finally, the defendants' actions intimidated plaintiff and made him fearful of losing his job if he were to file a complaint.

In general, "[t]he federal courts 'have taken a uniformly narrow view of equitable exceptions to Title VII limitations periods.'" López v. Citibank, N.A., 808 F.2d 905, 906 (1st Cir. 1987) (quoting Earnhardt v. Puerto Rico, 691 F.2d 69, 71 (1st Cir. 1983) (citations omitted)). In López v. Citibank, N.A., the First Circuit Court of Appeals declared that "there is no absolute rule that would require tolling whenever there is a mental disability." Id. Plaintiff presented "no strong reason why, despite the assistance of counsel, he was unable to bring suit." Id. at 907.

Plaintiff was not represented by counsel until immediately before his complaint was filed in this court. (Docket No. 54, ¶ 30.) The plaintiff suffers from CFIDS, which impairs his cognitive abilities, such as attention and memory. According to the plaintiff, he was sexually harassed by Butler from June through August, 1990.[2] Later, on December 15,

---

[2] The defendants do proffer evidence of a deposition in which defendant stated that the sexual harassment he endured lasted for only the first two weeks of his job, which began in June, 1990. (Docket No. 75, Exhibit C.) Regardless, a reading of plaintiff's

CIVIL 96-2302 (JAG)                    8

1995, the plaintiff sent a letter to Dr. José Santana regarding his termination, which never mentioned the alleged harassment. Likewise, the plaintiff's sworn statement on January 11, 1996 concerning the discrimination he faced at his job never mentioned the sexual harassment. It was not until plaintiff's letter of August 27, 1996 that sexual harassment allegations were first memorialized in a complaint to the Secretary and Auxiliary Secretary of Personnel of the Department of Family, and the Director of the Legal Division.

Although CFIDS is a serious, enfeebling disease, the plaintiff was not diagnosed with the disease until the beginning of 1995, some five years after the alleged sexual harassment. Further, the plaintiff's condition did not prevent him from sending letters, finding counsel, and eventually initiating this suit after his termination. There is no evidence that plaintiff is or was mentally incapacitated to the point that he could not file a timely complaint. See Street v. Vose, 936 F.2d 38, 40 (1st Cir. 1991) (inmate described as suffering from schizophrenia, a sociopathic personality, and a severe character disorder did not show requisite mental incapacitation to toll statute of limitations under Massachusetts law). Moreover, his lack of counsel, while significant, does not excuse plaintiff's failure to file a timely complaint. The plaintiff had actual knowledge that Butler's harassment was unlawful at the time. His interactions with Bruno, Rodríguez, and Figueroa reflect that plaintiff knew at the time that sexual harassment was an actionable offense. Finally, the plaintiff failed to file his complaint for almost six years. Certainly if plaintiff felt that his claim was meritorious and needed urgent recognition, he would have filed a complaint detailing his supervisor's conduct at some date within that elongated time period. In short, when weighing equities the length of time in which plaintiff failed to file a complaint, six years, looms ominously and definitely.

---

allegations makes plain that the alleged sexual harassment stopped once he was transferred to the Administrative Fiscal Office in Bayamón in August, 1990.

CIVIL 96-2302 (JAG)                                    9

The plaintiff has also failed to show how specific actions by defendants caused his condition to worsen, leading to his failure to file a timely complaint. Plaintiff proffers no causal chain and only generally states that constant torment has made his work environment more stressful, which then worsened his condition. Here, he also mistakenly relies on López v. Citibank, N.A., which in fact summarizes past cases that demonstrate the high threshold courts employ in allowing equitable tolling when defendants' actions caused plaintiff's injury. See, e.g., Clifford v. United States, 738 F.2d 977, 980 (8th Cir. 1984) (tolling statute where alleged malpractice caused coma); Zeidler v. United States, 601 F.2d 527, 531 (10th Cir. 1979) (similar). Obviously, the plaintiff has failed to present evidence of circumstances that rise to the level enunciated in Clifford v. United States (alleged malpractice caused a coma) in order to toll the statute of limitations.

Nor has the plaintiff sufficiently shown that Bruno's intimidation invokes the equitable estoppel doctrine. The equitable estoppel doctrine "may be properly invoked when the employee's untimeliness in filing his charge results from either the employer's 'deliberate design' to delay the filing or actions that the employer 'should unmistakably have understood' would result in the employee's delay." Clark v. Resistoflex Co., A Div. of Unidynamics Corp., 854 F.2d 762, 769 (5th Cir. 1988) (quoting Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir.1987). The plaintiff has the burden of proving the active steps undertaken by defendant to prevent a timely filing. See Rhodes v. Guiberson Oil Tools Div., 927 F.2d 876, 879 (5th Cir.), cert. denied, 502 U.S. 868 (1991).

Plaintiff has failed to demonstrate how either his employer's "deliberate design" or actions that the employer "should unmistakably have understood" would result in employee's delay actually did result in plaintiff's delay in timely filing his complaint. The plaintiff does show Bruno's recalcitrance as well as Rodríguez' and Figueroa's flippance and

CIVIL 96-2302 (JAG)                                10

incredulity towards his complaints about his supervisor. But these incidents are far from a 'deliberate design' instituted by any one of these three or the Administration. Nor do they amount to an unmistakable understanding that their actions would result in delay. The plaintiff has presented no evidence that these individuals or the Administration took active steps to block his claim of sexual harassment during the period immediately following the alleged incidents or for the six years until a complaint eventually was made. Finally, the plaintiff has failed to present any evidence that demonstrates because he was in fear of losing his job, equitable tolling should apply to his sexual harassment claim. There exists no evidence that any of plaintiff's supervisors or co-workers ever directly threatened him with the loss of his job. Even if *arguendo* plaintiff was rightfully in fear of losing his job if he complained about the alleged sexual harassment, he still did not file a complaint until one year after his termination. The complaint was filed beyond the 300 day limitation period even if this court tolled the time limitation for his entire employment period.

For these reasons, I recommend that defendants' motion for summary judgment concerning plaintiff's sexual harassment claim be GRANTED and that the same be DISMISSED.

V. ADA AND ELEVENTH AMENDMENT IMMUNITY

The defendants also aver that the Department of Family is protected by the Eleventh Amendment and thus plaintiff is precluded from bringing suit against this entity of the Commonwealth. The defendants maintain that the Department of Family has not waived its immunity and Congress has not given clear legislative intent that it wishes to make state actor's privy to civil suit for monetary damages. (Docket No. 51.)

The Eleventh Amendment provides:

> The judicial power of the United States shall not be construed
> to extend to any suit in law or equity, commenced or prosecuted

CIVIL 96-2302 (JAG)                                    11

> against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend. XI.

Eleventh Amendment immunity can be raised at any time because of its jurisdictional implications. See Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 99 n.8 (1984); Acevedo López v. Police Dep't of the Commonwealth of Puerto Rico, 247 F.3d 26, 28 (1st Cir. 2001). "Puerto Rico, despite the lack of formal statehood, enjoys the shelter of the Eleventh Amendment in all respects." Acevedo López v. Police Dep't of the Commonwealth of Puerto Rico, 247 F.3d at 28 (quoting Ramírez v. Puerto Rico Fire Serv., 715 F.2d 694, 697 (1st Cir. 1983)). Finally, "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the state itself." Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989) (citing Brandon v. Holt, 469 U.S. 464, 471 (1985)).

After the defendants raised the Eleventh Amendment issue in their motion for summary judgment, the Supreme Court decided Board of Trustees of Univ. of Alabama v. Garrett, 531 U.S. 356 (2001). In it, the Supreme Court held that state employee suits in federal court to recover monetary damages for a state's non-compliance with Title I of the ADA are barred by the Eleventh Amendment. Id. at 373-74. Further, the United States District Court for the District of Puerto Rico has subsequently held that the Eleventh Amendment bars ADA suits against the instrumentalities of Puerto Rico. Vizcarrondo v. Board of Trustees of the Univ. of Puerto Rico, 139 F. Supp. 2d 198, 202 (D.P.R. 2001). Therefore, it is well settled that the Eleventh Amendment bars suits by state employees for monetary damages against instrumentalities of Puerto Rico.

The plaintiff contends that the Department of Family is not an instrumentality of Puerto Rico as argued by defendants. The plaintiff is mistaken. The Department of Family

CIVIL 96-2302 (JAG)                                    12

is undisputably an instrumentality of the Commonwealth of Puerto Rico. 12 P.R. Laws Ann. § 211. Therefore, defendants rightfully claim that the Department of Family is an entity of the Commonwealth of Puerto Rico for purposes of Eleventh Amendment immunity.

The defendants' motion for summary judgment does not name any specific persons involved in the lawsuit but merely references the Department of Family when arguing for Eleventh Amendment immunity. I interpret defendants' motion for summary judgment concerning the Department of Family to include Carmen Rodríguez Rivera, Secretary for the Department of Family, and Ramón Hernández Zayas, Auxiliary Secretary of Personnel for the Department of Family, in their official capacities at the Department of Family.

Therefore, I recommend that the defendants' motion for summary judgment as to the Commonwealth of Puerto Rico, Carmen Rodríguez Rivera, in her official capacity as Secretary of the Department of Family, and Ramón Hernández Zayas, in his official capacity as Auxiliary Secretary of Personnel for the Department of Family, be GRANTED.

Under the provisions of Rule 510.2, Local Rules, District of Puerto Rico, any party who objects to this report and recommendation must file a written objection thereto with the Clerk of this Court within ten (10) days of the party's receipt of this report and recommendation. The written objections must specifically identify the portion of the recommendation, or report to which objection is made and the basis for such objections. Failure to comply with this rule precludes further appellate review. See Thomas v. Arn, 474 U.S. 140, 155 (1985), reh'g denied, 474 U.S. 1111 (1986); Davet v. Maccorone, 973 F.2d 22, 30-31 (1st Cir. 1992); Paterson-Leitch Co. v. Massachusetts Mun. Wholesale Elec. Co., 840 F.2d 985 (1st Cir. 1988); Borden v. Secretary of Health & Human Servs., 836 F.2d 4, 6 (1st Cir. 1987); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983); United States v.

CIVIL 96-2302 (JAG)                                    13

Vega, 678 F.2d 376, 378-79 (1st Cir. 1982); <u>Park Motor Mart, Inc. v. Ford Motor Co.</u>, 616 F.2d 603 (1st Cir. 1980).

In San Juan, Puerto Rico, this 28th day of May, 2002.

*(signature)*
JUSTO ARENAS
United States Magistrate Judge

s/cs:to ( ✓ )
attys/pts
in ICMS

5/29/02