## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

David Bravo Perazza,

**Plaintiff**

v.

Commonwealth of Puerto Rico,
<u>et al.</u>,

**Defendants**

CIVIL NO. 96-2302(JAG)

---

### OPINION AND ORDER

Plaintiff David Bravo Perazza (hereinafter "Bravo") filed this civil rights lawsuit against the Commonwealth of Puerto Rico and several officers of the Commonwealth's Family Department on October 24, 1996. (Docket No. 1.)  The defendants filed a motion for summary judgment on April 14, 1999 (Docket No. 51), which Bravo opposed. (Docket No. 54.) Thereafter, defendants supplemented their motion for summary judgment (Docket No. 75), to which Bravo responded. (Docket No. 81.)  United States Magistrate Judge Justo Arenas issued a Report and Recommendation on May 29, 2002, recommending that the Court **GRANT** defendants' motion for summary judgment and dismiss the case in its entirety. (Docket No. 93).

Pending before this Court are Bravo's objections to the Magistrate Judge's Report and Recommendation. (Docket No. 98). After reviewing the objections, the Court **ADOPTS** the Report and

2

Recommendation (Docket No. 93), and **GRANTS  Dockets Nos. 51 and 75**.

## FACTUAL BACKGROUND

Bravo began working for the Commonwealth's Family Department early in June of 1990.  In 1995, Bravo was diagnosed with various serious ailments, including: personality disorder, Chronic Epstein Barr Virus ("CEBC"), Chronic Fatigue Immune Dysfunction System ("CFIDS").  The details of his medical condition and impairments are discussed in detail in the Magistrate Judge's Report and Recommendation. (Docket No. 93.)  Sometime in June of 1995, Bravo sought reasonable accommodation under the ADA from the Family Department due to his deteriorating condition.  Thereafter, Bravo was discharged on August 31, 1995. (Docket No. 54, Exhibit 1.) Plaintiff then brought this action against the Commonwealth, the Family Department and some of its officers under the Americans with Disability Act ("ADA").  In addition, Bravo brought a belated claim under Title VII for sexual harassment based on facts that allegedly occurred sometime between 1990 and 1993.

## STANDARD OF REVIEW

A district court may, on its own motion, refer a pending matter to United States Magistrate Judge for a Report and Recommendation.  28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b); Local Rule 503.  The losing party may contest the Report and Recommendation by filing written objections within ten days of being served with a copy of the Report and Recommendation.  The

3

Court must then make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made.  The Court may accept, reject or modify, in whole or in part, the magistrate's recommendation. "Failure to raise objections to the Report and Recommendation waives that party's right to review in the district court and those claims not preserved by such objections are waived on appeal."  Davet v. Maccarone, 973 F.2d 22, 30-31 (1st Cir. 1992).


## DISCUSSION

In his objections to the Magistrate's Report and Recommendation, Bravo argues: (1) that the Commonwealth's conduct in this litigation constitutes a waiver of the immunity protection as it relates to the ADA claim; (2) that the sexual harassment claim is not time-barred because he is entitled to equitable tolling; and, (3) that defendants's failure to post the required notice warrants a tolling of the statute of limitations.

*I.  The ADA claim and the Eleventh Amendment:*

In his Report and Recommendation the Magistrate Judge correctly concluded that the Eleventh Amendment bars Bravo's ADA claim against the Commonwealth's Family Department. Bravo mistakenly relies on Lapides v. Board of Regents of the Univ. System of Ga., 122 S.Ct. 1640 (2002), to support his argument that the Commonwealth waived its Eleventh Amendment immunity by actively

4

litigating this lawsuit.[1] The <u>Lapides</u> decision is particular to a State's removal of a case from state court to federal court when the State has expressly waived its immunity at the state court level. That is not the case here. The plaintiff has not cited one case, and the Court has found none, where a State has been found to waive its Eleventh Amendment immunity because it failed to raise the immunity defense prior to filing its summary judgment motion. In view of the aforementioned, this Court agrees with the Magistrate Judge's finding that Bravo's ADA claim against the Commonwealth is barred by the Eleventh Amendment and should be dismissed. See <u>Board of Trustees of Univ. of Alabama v. Garett</u>, 531 U.S. 356 (2001); <u>Acevedo Lopez v. Police Dept. of the Commonwealth of Puerto Rico</u>, 247 F.3d 26, 28-29 (1st Cir. 2001).

## II. Equitable Tolling due to Bravo's mental incapacity:

Bravo alleges that he was subjected to sexually harassing advances by one of his supervisors soon after he was employed in 1990. (Docket No. 54, Exhibit 2.) In addition, Bravo asserts that his attempts to inform other supervisors, and the Department's Assistant Personnel Director, of the alleged sexual harassment proved futile, since he felt intimidated by their responses. (Docket No. 54, Exhibits 1, 3, and 5.) In his complaint Bravo claims that he was involuntarily transferred to a different

---

[1]    Bravo's reliance on <u>Varela-Fernandez v. Burgos</u>, 81 F.Supp.2d 297 (D.P.R. 1999), is similarly misguided, since this case also involved a removal.

5

facility within the Family Department on September 9, 1993 because he complained of his supervisor's sexual advances and innuendos. There is no evidence on the record that the sexual harassment allegedly endured by Bravo occurred any time after 1993. (Docket 93, at 7 n. 2).

Bravo argues that the Magistrate Judge erred in finding that his sexual harassment claim was time-barred. It is undisputed that Bravo failed to comply with the filing prerequisites of Title VII. Bravo asserts, however, that his claim is not time-barred because he is entitled to equitable tolling due to his mental incapacity.[2]

The filing requirements under Title VII are non-jurisdictional and thus are subject to equitable modification (Title VII's filing period is akin to a statute of limitations, rather than a jurisdictional prerequisite). "The burden of demonstrating the appropriateness of equitable tolling lies with the plaintiff." Hardy v. Potter, 191 F. Supp.2d 873, 879 (E.D. Michigan 2002)(citing Boos v. Runyon, 201 F.3d 178, 185 (2d Cir. 2000)). "[E]quitable tolling [is] available in principle but only if the

---

[2]      Bravo argues that there is a genuine issue of material fact as to whether or not his mental incapacity warrants the equitable tolling of the period for filing Title VII's prerequisite to suit making summary judgment inappropriate. Assuming, *arguendo*, that Bravo's mental incapacity was of such severity that it warranted the equitable tolling of Title VII's filing time period, the Court could hold an evidentiary hearing to decide that question rather than submit it to a jury. See Melendez-Arroyo v. Cutler-Hammer de P.R. Co., Inc., 273 F.3d 30, 39 (1st Cir. 2001).

6

plaintiff show[s] that [his] mental disability was so severe that
the plaintiff was '[un]able to engage in rational thought and
deliberate decision making sufficient to pursue [his] claim alone
or through counsel.'" Melendez-Arroyo v. Cutler-Hammer de P.R. Co.,
Inc., 273 F.3d 30, 37 (1st Cir. 2001)(citing Nunnally v.
MacCausland, 996 F.2d 1, 5 (1st Cir. 1993)). See also Hernandez
Arce v. Bacardi Corporation, 37 F.Supp.2d 112, 114 (D.P.R.
1999)(citing Lopez v. Citibank, N.A., 808 F.2d 905, 906 (1st Cir.
1987))(plaintiff's allegation of mental or emotional disability
does not automatically toll the ADEA charge filing period).

Assuming, arguendo, that plaintiff's mental condition was so
severe as to warrant equitable tolling, his sexual harassment claim
would still be time-barred.   The record shows that the facts
relative to the sexual harassment claim occurred sometime in 1990
and, at the very latest, continued until 1993, when Bravo was
transferred.  By contrast, the medical evidence shows that Bravo
was first diagnosed as having CFIDS in 1995.  There is no evidence
in the record of Bravo's ailments, or of the ailments's effect on
Bravo, during the time period of 1990, when the sexual harassment
allegedly occurred.  The Court finds that Bravo has not met his
burden of proving that his mental incapacity, which was diagnosed
years after the sexual harassment allegedly took place, interfered
with his ability to engage in rational thought and pursue his Title
VII claim on a timely basis. As the Magistrate Judge correctly

stated, "when weighing the equities the length of time in which [Bravo] failed to file a complaint, six years, looms ominously and definitely." (Docket No. 93 at 8.)

### III. Failure to post notice:

Bravo also bases his equitable tolling argument upon allegations that the Commonwealth failed to satisfy its statutory obligation to post notice of employees's rights under Title VII. The Commonwealth's Family Department has not refuted Bravo's contention that it failed to post Title VII's requisite notice, and the Magistrate Judge did not address this issue in his report and recommendation.

Where, as here, an employer fails to post the proper notice, the limitations period *may* be tolled only until such time as plaintiff acquires knowledge of his/her rights. See <u>Kale v. Combined Insurance Co. of America</u>, 861 F.2d 746, 752 (1st Cir. 1988)(discussing the issue of failure to post notice in the context of ADEA); <u>Earnhardt v. Commonwealth of Puerto Rico</u>, 691 F.2d 69, 73 (1st Cir. 1982). See also <u>Callowhill v. Allen-Sherman-Hoff Co., Inc.</u>, 832 F.2d 269, 272-273 (3rd Cir. 1987); <u>C.M. English v. Pabst Brewing Co.</u>, 828 F.2d 1047, 1049 (4th Cir. 1987); <u>Berry v. Joseph E. Seagram & Sons, Inc.</u>, 744 F. Supp. 214 (C.D. California 1990)(discussing the posting requirements under the ADEA); <u>Edgeworth v. Fort Howard Paper Co.</u>, 673 F. Supp. 922, 924-926 (N.D. Illinois 1987). When a Court finds that an employer's failure to

8

post the required notice tolls the filing period, the period "begin[s] to run from the time that the employee acquires actual knowledge of his rights or retains an attorney." Vance v. Whirlpool Corp., 716 F.2d 1010, 1013 (4th Cir. 1983)(citations omitted).

Here, the alleged sexual harassment occurred in 1990, and at the very latest culminated in Bravo's transfer in September of 1993.[3] It is evident from the record that Bravo knew that his supervisor's conduct was illegal, since he admits that he tried to bring it to the attention of several of his other supervisors prior to his transfer in 1993. It was not until August of 1996, a year after his termination (which he alleges was in violation of the ADA), however, that Bravo first sent a letter to his former employer detailing the sexual harassment allegations contained in the complaint. This lawsuit was filed on October 24, 1996.[4]

As previously mentioned, Bravo does not contest that he failed

---

[3]    There is no evidence on the record in support of the contention that Bravo's transfer in 1993 was motivated by illegal discrimination. In fact, Bravo does not even address this issue in his opposition to the summary judgment motion. Rather, the generalized allegation that the 1993 transfer was discriminatory is contained in the complaint.

[4]    It appears that Bravo did file a tardy complaint with the EEOC during 1996. The record, however, contains no copy of the same. The only evidence of an EEOC filing is contained in defendant's summary judgment motion (Docket No. 51). This document is a charge of discrimination based on retaliation and made on July 2, 1997 (eight months after the filing of the complaint in this case). The charge was notified to the employer on August 14, 1997.

9

to comply with the filing requirements of Title VII.  Rather, he asks this Court to equitably toll Title VII's statute of limitations because of the Commonwealth's failure to post the requisite notice.  This the Court will not do.  "Equity, after all, ministers to the vigilant, not those who slumber upon their rights." Sandstrom v. ChemLawn Corp., 904 F.2d 83, 87 (1st Cir. 1990).  Bravo sat on his rights for at least three years[5] (but possibly for five) after the alleged sexual harassment conduct took place before fling this suit.  The record shows that he knew that his supervisor's conduct was wrong back in 1990, and that he could have acquired actual knowledge of his Title VII if he would have followed the directives contained in the Family Department's internal sexual harassment policy.[6] (Docket No. 54, Exhibit 8.) Therefore, viewing the facts in the light most favorable to Bravo, the Court finds that the employer's failure to post the required notice does not warrant the tolling of the statutory period for such an inordinate period of time --certainly not for a time period long enough to salvage Bravo's claim.  Bravo's prolonged inaction

---

[5]    The Court will assume for purposes of this opinion only that the latest possible date in which the alleged sexual harassment occurred was in September of 1993.

[6]    Even though the document containing the Family Department's sexual harassment policy does not mention the EEOC or the EEOC's filing procedures, it does list various state agencies in which one can file a complaint or get information relative to the filing of a complaint.  One of the agencies listed is the local Labor Department's Anti-Discrimination Unit. (Docket No. 54, Exhibit 8, Article II.)

10

persuades the Court that he is not entitled to equitable relief.

## CONCLUSION

In view of the aforementioned, this Court **ADOPTS** the Report and Recommendation (Docket No. 93) in its entirety, and **GRANTS Dockets Nos. 51 and 75.** Judgment will be entered accordingly.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 5th day of August 2002.

JAY A. GARCIA-GREGORY
U.S. District Judge